1  Bahig Saliba

2  10824 East Santa Fe Trail

3  Scottsdale, Arizona  85262

4  Ph. 480-235-0304

5  Email: medoverlook@protonmail.com

6

7  ## IN THE UNITED STATES DISTRICT COURT

8  ## FOR THE DISTRICT OF ARIZONA

9

10  Bahig Saliba,                    Case No.  CV-22-543-PHX-JJT

11  Plaintiff,

12  v.                               **RESPONSE TO DEFENDANTS**

13  Spokane International Airport *et. al.,*    **MOTION TO DISMISS FOR LACK OF**

14  Defendants.                      **PERSONAL JURISDICTION**

15

16

17

18

19

20

21  **IMPROPER CONCLUSION**

22

23      In his challenge, Mr. Robert T. Sullivan, has reached an improper conclusion of the

24  defendants' minimum contact with the state of Arizona. The plaintiff asserts that this Circuit Court

25  personal jurisdiction in this case is proper.

26

1

# BRIEF FACTUAL HISTORY

The current American Airlines (AA) is a product of mergers and acquisitions of several airlines led by America West Airlines.  AA maintains hubs in several major airports in the United States.  Phoenix Sky Harbor Airport is one of AA's major hubs that was the home base of America West Airlines, Arizona's Hometown airline.  The plaintiff is an original America West pilot and has always been based in Arizona.

AA's network system has presence in the entire United States and specifically at the Spokane International Airport.  The airline operations control is centralized in Fort Worth, Texas and so are the airline's operations at Spokane International Airport.  The airline structure dictates that any contact with any AA representative anywhere in the system find its way to the appropriate location, and in this case the AA Phoenix, Arizona hub.

# DEFENDANTS ACTIONS

Spokane International Airport, as part of a transportation system, has a commercial interest in Arizona and a connection.  That connection is advertised on the Spokane International Airport website.  The airlines, and particularly AA, create those connections that allow Washingtonians to travel to Arizona and by doing so, Spokane as a public entity, contacts Arizona daily and extends its interests and business well into Arizona.  Additionally, by and through its agents, in this case the remaining three defendants, it extended its reach beyond the borders of Washington and materially and substantially caused irreparable harm to the plaintiff.  As stated by Mr. Sullivan on P. 5 L. 22 of the motion to dismiss, "The individual Defendants' work in and as a part of the airport's operations."  Spokane and the defendants' actions are one and same in this case.

1    On P. 4 L. 8 of the motion to dismiss it is stated: "All of the defendants' activities, which

2    are subject of the complaint, took place in Washington." That message was repeated in the motion

3    several times. The facts differ. The actions of the defendants were not contained in Washington,

4    and the defendants certainly availed themselves to the laws and protection of Arizona. The

5    plaintiff clearly identified such actions in the complaint on P. 14 L. 15, on P. 17 L. 8, on P. 21 L.

6    4, and again on P. 18 L. 13 of the complaint. Had the defendants followed the law and the Spokane

7    Police Department Policy Manual (the manual), the plaintiff would not have and would not

8    continue to suffer this detrimental outcome, he is one step away from termination and has not

9    flown an aircraft for AA since December 6th, 2021. *See* complaint P.18 L.16 and P.19 L.4 and 6.

10

11    Video and audio evidence support the fact that the defendants went out of their way to

12    instantly communicate to AA the events taking place. The defendants actively and purposely

13    created an immediate channel of communication with AA and paved the way, through follow up

14    emails, to further persecute the plaintiff through a process under the control of the airline, knowing

15    that the effects of their actions would manifest in Arizona. A similar outcome but in a different

16    state would occur if the plaintiff were based at any other AA hub.

17

18    The plaintiff has requested through the freedom of information act and was provided with

19    the documents below. The communications that took place between the defendants and AA clearly

20    show 1) The existence of the contact with the forum State, 2) That the defendants initiated the

21    contact and continued such contact in future dealings and well after the plaintiff left Washington,

22    3) The defendants intended on providing further assistance to AA in the future, and 4) Guided and

23    coached AA in the direction it should take to further persecute the plaintiff with the help of more

24    information from the Transportation Security Administration (TSA) local manager in Spokane.

25

26

3

The plaintiff alleges there may exist other communications that took place that were not documented.  The plaintiff himself witnessed Sgt. Watson communicating with the AA agent upon his arrival at the gate area.  The plaintiff also alleges that more evidence in discovery and deposition will reveal the true nature of the defendants' actions.  The plaintiff alleges that the defendants acted officiously and inappropriately established contacts with AA.

The following are some of the communications between the defendants and AA the day of and the day after the plaintiff left Washington.   It appears that there may be other forms of communications that took place between the defendants and AA.

It is clear here that defendant Rose-Watson, as the leader of the group and in agreement with the other defendants, used the wealth of her experience to coach AA, a multi-billion-dollar corporation, on how to further persecute a working man who is abiding by the Federal Aviation Administration laws and the mask mandate to safely take his passengers from Spokane to Dallas Fort Worth.

I am also including a page from the hearing that AA conducted in their persecution of the plaintiff.  It clearly indicates there existed a line of communications between AA and the Spokane Airport police.

The defendants, not only acted outside their authority, but they also went beyond the borders of Washington and well into Arizona.

1/9/22, 10:28 AM                                                 Re: Captain Bahig Saliba

Re: Captain Bahig Saliba
From:   Tarina Rose <trose@spokaneairports.net>
Sent:   Tue, Dec 7, 2021 at 2:20 pm
To:     Kirby, John
Cc:     Cooley JR, Bill, Clay Creek

I should add that TSA's report of the incident is separate from ours and should be considered if
investigated. The head of our local TSA Regulatory is Amanda Weigum and she can be reached at 509-
626-5413. You might have to complete their FOIA request form for their copy but it should be no
problem. That way you can see Saliba interaction with those folks.

Sgt. Rose-Watson


-----Original Message-----
From: "Kirby, John" <John.a.kirby@aa.com>
Sent: Tuesday, December 7, 2021 2:13pm
To: "Tarina Rose" <trose@spokaneairports.net>, "Cooley JR, Bill" <william.cooley@aa.com>
Cc: "Clay Creek" <ccreek@spokaneairports.net>
Subject: Re: Captain Bahig Saliba

Adding Bill

John Kirby
Regional Manager ORD PHX LAX
American Airlines
3102135399


On Dec 7, 2021, at 3:05 PM, Tarina Rose <trose@spokaneairports.net> wrote:

Mr. Kirby,

Thank you for your time this afternoon. The report number on this case is 2021-86000731.
Officers that were involved include: myself (Sgt. Rose-Watson), Officer Creek and Officer
Holschen.

You may request a public records request by going to https://spokaneairports.net. Once you pull up
the airport's webpage, scroll down to the bottom of the page and click on: "Doing Business". Once
that is clicked, towards the top of that page is another tab called, "Doing Business." Once you click
on that link there is a tab for public records request. There is a small fee for a copy but there are
only 2 pages to be copied.

You may also request body camera footage. Once you receive the requested documents, I can
further assist whomever is investigating this case. Especially in knowing why charges where not
sanctioned on this individual.

I'm back to work on Sunday, December 12th at 6am. I will be working Sunday-Wednesday next
week.

If you need any additional assistance, please feel free to reach out to me.

Thank you,

Sgt. Rose-Watson

<image001.jpg>

1

Re: Captain Bahig Saliba

## Re: Captain Bahig Saliba

From: Kirby, John <John.a.kirby@aa.com>
Sent:  Tue, Dec 7, 2021 at 3:31 pm
To:    Tarina Rose
Cc:    Cooley JR, Bill, Clay Creek

Thank you

John Kirby
Regional Manager ORD PHX LAX
American Airlines
3102135399

> On Dec 7, 2021, at 3:21 PM, Tarina Rose <trose@spokaneairports.net> wrote:

> I should add that TSA's report of the incident is separate from ours and should be considered if
> investigated. The head of our local TSA Regulatory is Amanda Weigum and she can be reached at
> 509-626-5413. You might have to complete their FOIA request form for their copy but it should
> be no problem. That way you can see Saliba interaction with those folks.

> Sgt. Rose-Watson

> -----Original Message-----
> From: "Kirby, John" <John.a.kirby@aa.com>
> Sent: Tuesday, December 7, 2021 2:13pm
> To: "Tarina Rose" <trose@spokaneairports.net>, "Cooley JR, Bill" <william.cooley@aa.com>
> Cc: "Clay Creek" <ccreek@spokaneairports.net>
> Subject: Re: Captain Bahig Saliba

> Adding Bill

> John Kirby
> Regional Manager ORD PHX LAX
> American Airlines
> 3102135399

>> On Dec 7, 2021, at 3:05 PM, Tarina Rose <trose@spokaneairports.net> wrote:

>> Mr. Kirby,

>> Thank you for your time this afternoon. The report number on this case is 2021-86000731.
>> Officers that were involved include: myself (Sgt. Rose-Watson), Officer Creek and Officer
>> Holschen.

>> You may request a public records request by going to https://spokaneairports.net. Once you pull
>> up the airport's webpage, scroll down to the bottom of the page and click on: "Doing Business".
>> Once that is clicked, towards the top of that page is another tab called, "Doing Business." Once
>> you click on that link there is a tab for public records request. There is a small fee for a copy but
>> there are only 2 pages to be copied.

>> You may also request body camera footage. Once you receive the requested documents, I can
>> further assist whomever is investigating this case. Especially in knowing why charges where not
>> sanctioned on this individual.

1

9/22, 10:35 AM                                                    Re: Captain Bahig Saliba

## Re: Captain Bahig Saliba

From:  Kirby, John <John.a.kirby@aa.com>
Sent:  Tue, Dec 7, 2021 at 3:31 pm
To:    Tarina Rose
Cc:    Cooley JR, Bill, Clay Creek

---

Thank you

John Kirby
Regional Manager ORD PHX LAX
American Airlines
3102135399

> On Dec 7, 2021, at 3:21 PM, Tarina Rose <trose@spokaneairports.net> wrote:
>
>
> I should add that TSA's report of the incident is separate from ours and should be considered if investigated. The head of our local TSA Regulatory is Amanda Weigum and she can be reached at 509-626-5413. You might have to complete their FOIA request form for their copy but it should be no problem. That way you can see Saliba interaction with those folks.
>
> Sgt. Rose-Watson
>
>
> -----Original Message-----
> From: "Kirby, John" <John.a.kirby@aa.com>
> Sent: Tuesday, December 7, 2021 2:13pm
> To: "Tarina Rose" <trose@spokaneairports.net>, "Cooley JR, Bill" <william.cooley@aa.com>
> Cc: "Clay Creek" <ccreek@spokaneairports.net>
> Subject: Re: Captain Bahig Saliba
>
> Adding Bill
>
> John Kirby
> Regional Manager ORD PHX LAX
> American Airlines
> 3102135399
>
>> On Dec 7, 2021, at 3:05 PM, Tarina Rose <trose@spokaneairports.net> wrote:
>>
>> Mr. Kirby,
>>
>> Thank you for your time this afternoon. The report number on this case is 2021-86000731. Officers that were involved include: myself (Sgt. Rose-Watson), Officer Creek and Officer Holschen.
>>
>> You may request a public records request by going to https://spokaneairports.net. Once you pull up the airport's webpage, scroll down to the bottom of the page and click on: "Doing Business". Once that is clicked, towards the top of that page is another tab called, "Doing Business." Once you click on that link there is a tab for public records request. There is a small fee for a copy but there are only 2 pages to be copied.
>>
>> You may also request body camera footage. Once you receive the requested documents, I can further assist whomever is investigating this case. Especially in knowing why charges where not sanctioned on this individual.

1



**SPOKANE AIRPORT POLICE**

CASE# **2021-86000731**

**FIELD CASE REPORT**

| NARRATIVE |
| --- |

On 12-06-2021 at 0518 hrs, I was dispatched to the C Screening Checkpoint of the Spokane Airport on a pilot who was in non-compliance of the face mask order. When I arrived, I spoke with the pilot who was identified as Bahig Saliba a pilot for American Airlines.

I told him that he needed to wear a mask in the airport. Since he was a pilot on a plane what is he going to do if a passenger on a plane does nor wear a mask. He stated, "That is their prerogative". He stated he is a federally certified pilot and tried to show me the regulation stating he does not have to wear the mask. I told him he was in the airport and he had to wear a mask. He stated that he did not. He stated he does not wear the mask when he is on the flight deck. He argued that he did not have to wear the mask by the regulation. I told him he had to wear a mask in the airport per the presidential order and the governor's order. He stated that he was allowed to take his mask off to catch his breath. Spokane Airport CCTV showed him entering airport without a mask and not wearing a mask throughout his time going through screening. He kept wanting to show me what he said were regulations that said he did not have to wear a face mask. When I told him that I would be submitting a report that would be going through TSA Regulatory and he may be fined up to $13,000.00 he said, "that's fine". When he was told that a Federal Law Enforcement officer as well as TSA Regulatory would probably be getting in contact with him he nodded his head. He was then released to go make his flight.

During conversation with Officer Holschen he stated that he could remove his mask to breath normally per the CDC order.

He was the pilot for Flight 484 to Dallas. His actions caused a delay of appx 1 minute according to the station manager. During his time he was in the airport he never once put on his mask despite being asked to do so. He was completely defiant and was not going to put on a mask because he felt he did not think he needed to.

The contact was audio video taped on my body camera and Officer Holschen's body camera. Airport CCTV video was archived for future review.

I certify under the penalty of perjury under the laws of the State of Washington that all statements made herein are true and accurate and that I have entered my authorized user ID and password to authenticate it.  Place Signed: Spokane County WA

| REPORTING OFFICER | DATE | REVIEWED BY | |
| --- | --- | --- | --- |
| 900094 Creek | 12/06/2021 | Rose-Watson, Tarina | 12/06/2021 |

2  OF 2

1

| SPOKANE AIRPORT POLICE | | CASE# 2021-86000731 |
|---|---|---|
| **FIELD CASE REPORT** | | REPORTING DISTRICT Other Jurisdiction |

**EVENT**

| REPORTED DATE/TIME 12/06/2021 05:27 | OCCURRED INCIDENT TYPE **Suspicious Person** | LOCATION OF OCCURRENCE **Spokane International Airport - SIA 9000 W AIRPORT DR** |
|---|---|---|
| OCCURRED FROM DATE/TIME 12/06/2021 05:18 | OCCURRED THRU DATE/TIME 12/06/2021 05:18 | **Spokane, WA** |

**OFFENSES**

| STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**SUBJECT**

| JACKET/SUBJECT TYPE **Adult     Person** | NAME (LAST, FIRST, MIDDLE SUFFIX) **Saliba, Bahig Nadim** | | | | NON-DISCLOSURE **N** |
|---|---|---|---|---|---|
| DOB 01/02/1964    AGE or AGE RANGE 57 | ADDRESS (STREET, CITY, STATE, ZIP) **10824 E Santa Fe Trail Scottsdale, AZ 85262** | | | | |
| RACE **Middle Eastern** | SEX **Male** | HEIGHT or RANGE **5'10** | WEIGHT or RANGE **180** | HAIR **Black** | EYE **Brown** |
| DL NUMBER/STATE **D00236813 / AZ** | PRIMARY PHONE Cellular Phone - Personal **(480)755-7889** | PHONE #2 | | PHONE #3 | |

The page below is from the hearing that AA conducted on January 6th, 2022, as a result of being informed by the defendants of the event on December 6th, 2021, and it clearly shows the extent of communications between the defendants and the plaintiff's employer. Neither the defendants nor AA has authority under the law to conduct any of their activity in persecuting the plaintiff.

9

1   specific information concerning the behavior or

2   performance in question, or any corroborating evidence, as

3   required in Section 21.A.H.1 of the JCBA.  Therefore,  I

4   am moving to reschedule this hearing.

5           So thank you, gentlemen.  I look forward to

6   rescheduling the hearing.

7       Q.    Okay.

8       A.    And that's my statement.  I will not say any

9   more.

10      Q.    Fair enough.  I hear your statement.  And I will

11  give you, I will give you a different side, if you will,

12  and tell you that we were told you weren't wearing a mask

13  at the Spokane airport.  TSA and local authorities had an

14  encounter with you going through another crew member.

15  That information was brought to Ken.  And they were going

16  to actually press charges but turned it over to American

17  Airlines to handle it within our own system, which brings

18  us to this Section 21 hearing.

19          So shy of a mug shot or you being on a police

20  blotter, American Airlines said we will take this, he is

21  our pilot, we will handle this Section -- we call it a

22  Section 21 process, but we will work through the

23  disciplinary process on the American Airlines side.

24          We have a policy here.  I didn't make it up.

25  Our CEO didn't make it up.  Ken and I have nothing to do

1    The plaintiff alleges that all three defendants have taken an oath to uphold and defend the
law and the constitution and they are to hold each other to account.  Sergeant Watson was loud
and clear when she announced her intention of notifying AA of the plaintiff and officers Creek
and Holschen had the duty and opportunity to correct her actions and prevent her from
overstepping their authority and availing themselves of the law and protection of Arizona.  All
three defendants operate as a unit and are held to account, especially when any one of them
becomes aware of a violation.

By their actions, all three defendants should have a reasonable expectation of being haled
into a courtroom other than in Washington State.

**LEGAL AUTHORITY**

The Supreme Court held that in determining personal jurisdiction we should not look at
the phrasing of the complaint in tort or contract, but the substance of the complaint.

Under Arizona. R. Civ. P. 4.2, an Arizona court may exercise personal jurisdiction over a
non-resident defendant to the maximum extent permitted by the Constitution.  Arizona's long-arm
statute has a broad remedial purpose and is liberally construed to confer upon Arizona residents
the maximum privileges permitted by the federal constitution.  *Meyers v. Hamilton Corp.,* 143
Ariz. 249, 252, 693 P.2d 904, 907 (1984)

As illustrated above, the plaintiff's allegations clearly indicate intentional and concerted contact with the forum State Arizona and that maintaining the suit in Arizona does not offend traditional notions of fair play and substantial justice. *Id.* At 252. 693 P.2d at 907.

"The notion of 'fair play and substantial justice' is a flexible one, requiring courts to look at the fact situation of each case to determine whether there are sufficient, purposeful 'minimum contacts' with the forum." *O'Conner, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. v. Bonus Utah, Inc*., 156 Ariz. 171,173, 750 P.2d 1374, 1376 (Ct App. 1988) (emphasis added). *See also Williams v. Lakeview Co.,* 199 Ariz. 3-4, 13 P.3d 280, 282-83 (2000) ("We cannot decide the issue of personal jurisdiction by applying any mechanical test or 'talismanic jurisdictional formulas'; the facts of each case must always be weighed in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'") (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S.  462, 485-86 (1985)

Also, in deciding if minimum contacts exist, "it is not the number of contacts involved but the importance of the particular contacts.  Quality, not the quantity of the defendant's activities, is what is persuasive." *Meyers,* 143 Ariz. At 253, 693 P.2d at 908.  Therefore, a single act is sufficient to establish a basis for personal jurisdiction.  *O'Conner,* 156 Ariz. at 173, 750 P.2d at 1376.

Causing the plaintiff to not be able to fly an aircraft for AA since December 6th, 2021 and be on the verge of losing a 24-year career with the airline speaks volumes of the effects of the defendants' actions.

1       The plaintiff asserts that even the hiring by the defendants of an Arizona law firm to file

2  the motion to dismiss in and of itself is minimum contact necessary to establish personal

3  jurisdiction over the defendants.

4

5

6       As the plaintiff alleges on P. 14 L. 15 of the complaint, which is supported by body cam

7  recordings, defendant Rose-Watson announced she would proceed to the AA gate to inform the

8  AA agent about the captain who refused to wear a mask.   The footage also indicates that the

9  defendant received confirmation from the AA gate agent, Tony, that the defendant's chief pilot in

10  Phoenix will be notified making the defendant aware of the effects of her actions and where they

11  were heading.

12

13

14       In *Walden v. Fiore*, the Supreme court has held that first the relationship must arise out of

15  contacts that the "defendant himself" creates with the forum State.   Burger King Corp. v.

16  Rudzewicz, 471 U.S. 462, 475 (1985).   Here, the defendants initiated and created such contact

17  with AA.

18

19

20       In *Gray Co. v. Firstenberg Machinery Co., Inc*, the Circuit Court decision held that

21  "purposeful availment requires that the defendant engage in some form of affirmative conduct

22  allowing or promoting the transaction of business within the forum state.  This focus upon the

23  affirmative conduct of the defendant is designed to ensure that the defendant is not haled into court

24  as the result of random, fortuitous or attenuated contacts…" *Id.* (citations omitted).  A defendant

25  has purposely availed himself of the benefits of a forum if he has deliberately "engaged in

26  significant activities within a State or has created 'continuing obligation' between himself and the

1  residents of the forum."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S. Ct 2174,

2  2183-84, 85 L.Ed.2d 528 (1985)

3

4

5       The defendants should not have notified AA of the events taking place at the security check

6  point, and the plaintiff asserts it is not required by law or anywhere in the 586 plus pages of the

7  manual to do so.  The plaintiff asserts that, per the mask order, the defendants' only options were

8  to advise the individual to place a mask over their nose and mouth and if the individual refused, to

9  escort the individual who refuses from the terminal.  Additionally, the plaintiff was operating under

10 an exemption and the defendants intently and purposefully notified AA of the plaintiff.  Their

11 actions were anything but random, fortuitous or attenuated contacts.

12

13

14      The plaintiff also alleged in the complaint on P. 17 L. 8 and P. 21 L. 4, and it is also

15 supported by the evidence, that the defendants created a communication channel with AA via email

16 and telephone on the following day.  The email, in possession of the plaintiff, (see above) suggests

17 the defendants were willing and eager to provide AA with all the information to help the airline

18 persecute the plaintiff.  In addition, the plaintiff's chief pilot in Phoenix, Kenneth Wood, informed

19 the plaintiff that: "Washington State is after you."  The statement is included in the complaint on

20 P. 18 L. 13.  The statement did not materialize out of thin air, but rather was transmitted to Kenneth

21 Wood as it was intended to be.

22

23

24      In this manner, and according to the Supreme Court decision in *Walden v. Fiore*, the Court

25 held that it upheld the assertion of jurisdiction over defendants who have purposefully "reach[ed]

26 out beyond" their State and into another by, for example, entering a contractual relationship that

27 "envisioned continuing and wide-reaching contacts" in the forum State," and "….although

physical presence in the forum is not a prerequisite to jurisdiction, Burger King, supra, at 476, physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact.

Additionally, AA is on record in the transcript of the first disciplinary hearing which the plaintiff went through, (attached above) that cooperation existed between the defendants and AA to persecute the plaintiff.  It is on the record that AA management in Phoenix stated the following: "….TSA and local authorities had an encounter with you going through… That information was brought to Ken.  And they were going to press charges but turned it over to American Airlines to handle it within our own system…."  Ken was the immediate supervisor of the plaintiff in Phoenix at the time.  The effects of the defendants' contacts with AA took effect immediately and upon the arrival of the plaintiff at his next destination.  The plaintiff has not flown an aircraft for AA since December 6th, 2021.

As illustrated above, the defendants purposefully injected their activities into Arizona.  The defendants' activities started in Washington and extended to Arizona and their actions have and continue to control the plaintiff's future at the airline and that of his livelihood.  The defendants' actions created a substantial connection with the forum State, Arizona.

In support of the above statement, the Supreme Court has held in *Walden v. Fiore* that: "….For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State….."   The plaintiff, after 24 years, is on the verge of termination from AA, substantial enough, as a result of contacts made by

1   the defendants to Arizona.  The exercise of jurisdiction in Arizona "comport with federal due

2   process."

3

4

5   The plaintiff does not see conflict in jurisdictional facts, however; if any jurisdictional facts

6   that conflict exist, then the court must view and resolve those facts in the light most favorable to

7   the plaintiff.  *MacPherson,* 158 Ariz. at 312, 762 P.2d at 599.  Where the determination of the

8   jurisdictional issue involves disputed factual questions that are intertwined with the merits of the

9   case and would therefore necessarily determine the merits of the case, the jurisdictional issue must

10  be left for trial rather than determined on a motion to dismiss.  *Bonner v. Minico, Inc.,* 159 Ariz.

11  246, 253-54, 766 P.2d 598, 605-06 (1988)

12

13

14  The plaintiff asserts that actions taken by the defendants meet all three requisites of the

15  Arizona long-arm statute, Rule 4.2 of Arizona Rules of Civil Procedure.  (1) Whether the non-

16  resident defendant has performed some act or consummated some transaction within the forum or

17  otherwise purposefully availed himself of the privileges of conducting activities in the forum; (2)

18  Whether the claim arises out of or results from the non-resident's forum related activities; and (3)

19  Whether the exercise of jurisdiction is reasonable.

20

21

22  The answer to three above is simple and straight forward.  The "but for" test the Ninth

23  Circuit has adopted is clear.  The plaintiff did not wear a facial mask in compliance with the

24  exemption available to him in the Security Directive of the TSA and the Federal Aviation

25  Regulations.  On many occasions, the plaintiff interacted with TSA personnel and explained

26  aviation law, the only time the plaintiff was stopped, and the police called was in Spokane.  The

27  plaintiff asserts that had the defendants not contacted AA in Arizona, the plaintiff would not have

1   suffered and continue to suffer any damages.   It is only because the defendants contacted AA that

2   the plaintiff is suffering damages, therefore it is reasonable for this court to exercise jurisdiction

3   over the defendants.

4

5

6       The plaintiff asserts that the defendants purposefully interjected into the forum state's

7   affairs, Arizona, and directed and displayed their effort at continuing to persecute the plaintiff well

8   after he left Washington.   The plaintiff had attempted feverishly to inform the defendants of his

9   rights and obligations as an airman but was summarily dismissed and shut out.   Considering what

10  occurred, the defendants could reasonably foresee themselves haled into court in the forum State.

11

12

13      The plaintiff asserts that it is of high importance to defend the citizens of Arizona and it is

14  in the interest of the courts to do so in Arizona.

15

16      The plaintiff asserts the fact that the defendants extended their reach to Arizona and

17  inflicted extreme damage and irreparable harm on the plaintiff and that moving the forum to

18  Washington will place an unsolicited heavy burden on the plaintiff.   The nature of the business the

19  plaintiff is engaged in takes him to various parts of the country and to require the plaintiff to bring

20  suit in each defendant's State for every time an incident occurs would be inequitable, inefficient,

21  and contrary to the interest of judicial economy and efficiency.   Furthermore, the defendants are

22  financially secure and have recently received millions of dollars in Federal funding which would

23  alleviate any financial burden on the defendants.

24      Again, it is untrue as the evidence will show and the motion states on P. 7 L11, that the

25  defendants did not purposefully inject their activities into Arizona.   The defendants' activities

26  targeted Arizona and were not limited to Washington. The effects of the defendants' actions

27  spanned four different States resting in Arizona, the home base of the plaintiff.   The defendants'

17

1    actions have controlled the direction of events taking place to date and are affecting the plaintiff

2    in unimaginable ways.

3

4    **IN CONCLUSION**

5

6         Given their intentional and willful contacts with the forum State, Arizona, and the fact that

7    if it were not for their actions of notifying the plaintiff's employer and offering all assistance in

8    persecuting him at present and in the future, the plaintiff would not have suffered irreparable harm.

9    This case falls well within the limits of due process, and it is befitting that the court exercises

10   personal jurisdiction over the defendants.

11

12        The plaintiff respectfully requests the court exercise personal jurisdiction over the

13   defendants in this matter and deny the defendants' request to dismiss the case.

14

15   Respectfully submitted,

16   Dated May 24TH, 2022

17

18

19

20                             Signed:

21                             *Bahig Saliba*

22

23                             Bahig Saliba

24                             10824 East Santa Fe Trail

25                             Scottsdale, AZ  85262

26                             Tel.  480-235-0304

27                             Email: medoverlook@protonmail.com

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on this day May 24, 2022, I electronically transmitted the forgoing

4  with the Clerk of the court using the CM/ECF system for filing, with copies submitted

5  electronically to the following recipient:

6

7

8                                              Robert T. Sullivan/Bar No. 022719

9                                              Law Offices

10                                             Broening Oberg Woods & Wilson

11                                             2800 N. Central Avenue, Suite 1600

12                                             Phoenix, AZ  85004

13                                             602-271-7700

14                                             Email: rts@bowwlaw.com

15

16

17     By

18     Bahig Saliba

19

20

21

22

23

24

25

26