# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bahig Saliba, | No. CV-22-00543-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Spokane International Airport, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12), to which Plaintiff filed a Response (Doc. 15) and in support of which Defendants filed a Reply (Doc. 18). The Court finds this matter suitable for determination without oral argument, LRCiv 7.2(f), and no party asked for such argument in any event.

**I.     The Complaint**

Plaintiff has been a pilot for American Airlines ("American") since 1998, living in Scottsdale, Arizona and based out of Phoenix Sky Harbor Airport. On December 6, 2021, Plaintiff was the assigned captain for American Flight 484, which was to depart Spokane, Washington early that morning on its way to Dallas, Texas. (Doc. 1, Compl. at 13.) At about 5:15 that morning, Plaintiff appeared at the Transportation Security Administration (TSA) security checkpoint at the Spokane International Airport, and upon presentation of his credentials was cleared by a TSA officer to make his way to the departure gate for Flight 484. At the time, Presidential Executive Order 13998 required TSA, among other federal agencies, to require masks to be worn in compliance with CDC guidelines in

airports. (Compl. at 4.) Plaintiff was not wearing a mask,[1] and he alleges the TSA manager asked him to place one over his nose and mouth. (Compl. at 14.) Plaintiff responded he was exempt from the mask requirement and presented to the TSA manager copies of regulations he asserted supported his position. (Compl. at 14.) The TSA manager summoned Defendants Rose-Watson, Creek and Holschen of the Spokane Airport Police. (Compl. at 14.)

Plaintiff alleges that the Defendants, upon arrival at the security checkpoint, "refused to listen" to his explanation that he was exempt from the mask requirement, insisted that he don a mask, threatened him with a fine if he refused to do so, took down his personal contact information, and detained him for approximately 15 minutes while he and they argued about the mask requirement. (Compl. at 14-16.) Plaintiff did not put on a mask, and the Defendants allowed him to proceed to his gate, after Defendant Rose-Watson "loudly announced she would go to the gate to notify [American] about the Plaintiff." (Compl. at 12.) When Plaintiff arrived at the gate for Flight 484, he noticed Defendant Rose-Watson "huddled in the corner with an [American] agent having a conversation." (Compl. at 16.) Plaintiff alleges that Defendants "made every effort to notify [American] about the incident and offered all the support necessary to prosecute him," as expressed in "email exchanges between [D]efendants and [American]." (Compl. at 17.)

Upon arrival at Dallas-Fort Worth Airport, American removed Plaintiff from flying and placed him on administrative leave pending a disciplinary hearing. As of the filing of the Complaint, American's disciplinary action against Plaintiff remained pending, though no criminal or administrative action was instituted against him.

Plaintiff brought this action against the Spokane Airport Authority and Officers Rose-Watson, Creek and Holschen under 42 U.S.C. § 1983 for violations of his First, Fourth and Fourteenth Amendment rights, alleging the Defendants racially profiled him and conspired with American "to exert the maximum punishment" on him. (Compl. at 19.)

---

[1] Plaintiff alleges in his Complaint that a host of federal regulations, which he details, exempt him as a commercial pilot from EO 13998's mask requirement. (Compl. at 4-7.) The merits of Plaintiff's argument are beyond the jurisdictional issue now before the Court.

He seeks actual and punitive damages of over $23 million; declaratory judgment that the enforcement of mask wearing on pilots is an interference with their authority to self-declare that they are fit for duty and a violation of their "authority of decision making relating to their health and safety and the safety of crew and passengers"; and injunctive relief prohibiting the Spokane International Airport and its agents from enforcing the masking requirement against pilots. (Compl. at 21-22.)

Defendants move under Fed. R. Civ. P. 12(b)(2) to dismiss the Complaint and this action. They assert that their actions as alleged are insufficient to confer personal jurisdiction on this Court over any of them.

## II.     LEGAL STANDARD

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party bringing the action has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction by challenging the plaintiff's allegations, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Because there is no statutory method for resolving the question of personal jurisdiction, "the mode of its determination is left to the trial court." *Data Disc*, 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where, as here, a court resolves the question of personal jurisdiction upon motions and supporting documents, the plaintiff "must make only a *prima facie* showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties'

affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at 1287. Courts recognize two bases for personal jurisdiction within the confines of due process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

### III. ANALYSIS

Plaintiff does not argue—nor could he do so credibly—that general jurisdiction exists in the District of Arizona over Defendants here. Rather, the parties confine their arguments to whether specific jurisdiction as defined above exists even when crediting as true all of Plaintiff's allegations.

Whether specific jurisdiction exists in a given case turns on the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit requires three elements to be met before specific jurisdiction will lie: 1) the non-resident defendant must do some act in, or consummate some transaction within, the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of, or results from, the defendant's forum-related activities; and 3) the exercise of jurisdiction must be reasonable. *Data Disc, Inc. v. Sys. Tech. Assoc's., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). All three requirements must be met for jurisdiction to exist, and it is Plaintiff's burden to establish the first two elements. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). As set forth below, this he cannot do.

Because Defendants are not alleged to have taken any action in Arizona, determination of the first requirement will turn on whether the Court finds purposeful availment by Defendants. The Supreme Court recently discussed purposeful availment for purposes of determining specific jurisdiction in *Ford Motor Co. v. Montana Eighth Judicial District Court*:

> The defendant, we have said, must take some act by which [it] purposely avails itself of the privilege of conducting activities within the forum state. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploit[ing] a market in the forum state or entering a contractual relationship centered there.

141 S. Ct. 1017, 1024–25 (2021) (internal quotations and citations omitted).

In the context of intentional tort claims, which comprise all claims at law Plaintiff asserts against Defendants, a plaintiff must show that the defendant "purposefully directed his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2007 (internal citation and quotation omitted). Purposeful direction, in turn, is

determined by the "effects" test announced by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The effects test requires that "the defendant allegedly must have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206.

The operative question, as the Supreme Court instructs, "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, "the relationship between the defendant, the forum state, and the litigation 'must arise out of contacts that the defendant himself creates with the forum state[.]'" *Id*. at 284. Based on the allegations Plaintiff has made in this case, the Court clearly concludes there is no such relationship. None of the intentional acts Plaintiff alleges in his Complaint are expressly aimed at Arizona. Defendants' actions as alleged at the TSA security checkpoint—detaining Plaintiff for 15 minutes; directing him to don a mask; threatening him with a fine; and arguing with him over applicability of the mask requirement—are not aimed at any forum other than the one Plaintiff and Defendants were in at the time of the confrontation—Washington. Similarly, the actions Plaintiff alleged Defendant Rose-Watson to have undertaken thereafter—talking to an American gate agent at the gate for Flight 484 and emailing American Regional Manager Jon Kirby to provide a report of the confrontation with Plaintiff—are not expressly aimed at Arizona.

Rose-Watson's communication with an American representative about Plaintiff at the gate in Spokane does not connect to Arizona in any meaningful way. Plaintiff's argument that by communicating with any representative of American, Rose-Watson should have expected that harm would have resulted to Plaintiff in Arizona is unpersuasive and an argument of convenience. American is headquartered in Texas, and while it maintains one of several hubs in Phoenix, that creates no knowledge or even supposition that harm will be caused to Plaintiff in Arizona by having a conversation with an American employee in Washington state.

Plaintiff's argument that Defendant Rose-Watson's email to Mr. Kirby, or a phone call to him or his staff,[2] was purposefully directed toward Arizona fares no better, for several reasons. First, Plaintiff neither alleges, nor does the email he attaches in support show, that the email to Mr. Kirby was directed to Arizona. Mr. Kirby's email block indicates he is American's Regional Manager for Chicago (ORD), Phoenix (PHX) and Los Angeles (LAX). Such information creates no knowledge that the sender is directing her email to Arizona. This is particularly true when Arizona is not the headquarters of American. The purposeful availment requirement exists to "ensure[] that a defendant will not be hailed into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations and internal quotations omitted). It is created, in other words, for situations just like this case.

And second, even if Defendants had sent an email to an American representative in Arizona, or placed a phone call there, that is still insufficient to constitute purposeful direction. As a general matter, "[t]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Insurance Co. of N. Am. v. Cruz,* 649 F.2d 1266, 1271 (9th Cir. 1981). The act of sending an email and or placing a phone call to Arizona is one that creates only an "attenuated" affiliation between Defendants, or any of them, and the forum. It will not support exercise of personal jurisdiction. *See Federal Deposit Ins. Corp. v. British American Ins. Co., Ltd*., 828 F.2d 1439, 1444 (9th Cir. 1987) (concluding that where all other relevant contacts occurred outside forum state, a foreign entity was not subject to the forum state's jurisdiction solely because its employee was present in forum state briefly to close a deal at issue in the action); *Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions, Inc.*, 963 F. Supp. 899, 902 (C.D. Cal. 1997) (Arizona furniture manufacturer's act in sending cease-and-desist

---

[2] Plaintiff did not allege in the Complaint that Defendant called Mr. Kirby or another American employee regarding the report of their encounter with Plaintiff, but he raised the call in his Response to the Motion to Dismiss. For purposes of evaluating the jurisdictional issue, the Court will treat the assertion as if it had been raised in an affidavit in support of the Response as required. *See Breeland*, 792 F.2d at 927.

- 7 -

letters to a California manufacturer held not sufficient for finding of purposeful availment conferring specific jurisdiction). Put another way, a solitary act with limited scope is the "attenuated contact" the Supreme Court contemplated in *Burger King*.

Finally, the precise argument Plaintiff makes here has been foreclosed in the Ninth Circuit for over forty years. As Defendants correctly point out in their Reply, "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980)). For all of these reasons, the Court cannot find that purposeful direction or availment by Defendants has occurred here, and personal jurisdiction does not lie in Arizona.

### IV.   CONCLUSION

As stated above, the Court concludes that it lacks personal jurisdiction over the Defendants in this matter. As Defendants note in their Reply, a Washington state forum may possess jurisdiction over Plaintiff's claims, but not an Arizona forum. The Court therefore will dismiss the Complaint and this action.

**IT IS ORDERED** granting Defendants' Motion to Dismiss (Doc. 12). This matter is dismissed and the Clerk of Court shall terminate it.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion to Preserve Evidence (Doc. 10).

Dated this 20th day of March, 2023.

Honorable John J. Tuchi
United States District Judge